STATE, EX REL. PATRICK SHERIDAN, COLLECTOR, &c., v. HENRY S. LANGSTAFF, TREASURER, &c.

1. If the city of Rahway use the moneys raised in the city by tax in the year 1880 to pay the city's quota of state and county taxes for the year 1879, it will have no right afterwards to have the credit changed to the quota of 1880.
2. If the city treasurer, of his own motion, use the moneys raised in the

city by tax in the year 1880 to pay the city's quota of state and county taxes for the year 1880, and afterwards of his own motion procure the county collector to change the credit to the quota of 1879, he personally cannot claim the right to rescind the change after the county collector has instituted proceedings to collect only the balance of the quota of 1879.

On *mandamus*.

Argued at November Term, 1882, before BEASLEY, CHIEF JUSTICE, and Justices KNAPP and DIXON.

For the relator, *P. H. Gilhooly*.

For the respondent, *G. Berry*.

The opinion of the court was delivered by

DIXON, J. The case shows that the respondent, Langstaff, treasurer of the city of Rahway, made certain payments to the relator, collector of Union county, who credited the same on account of the city's quota for state and county taxes for 1879, although these moneys had been derived in part from the taxes of 1880. One of these payments, viz., October 16th, 1880, $3000, was expressly directed by the respondent to be applied to the quota of 1879 ; two of them, viz., November 11th, 1880, $5000, and January 31st, 1881, $3500, were paid without any directions as to their application, but were credited by the collector to the same quota as being the oldest city debt, and afterwards, in proceedings for *mandamus* against the city and the treasurer to collect the balance of that quota, the credits were so allowed without objection, and the treasurer now swears it was his intention originally to pay them on the quota of 1879 ; and another of the payments, viz., December 17th, 1881, $1100, was at first directed by the respondent to be applied to the quota of 1880, and was so applied by the collector ; but afterwards, in a return to an alternative *mandamus* for the collection of the quota of 1879, the respondent claimed that the $1100 should be credited on that quota, and

the collector gave the credit accordingly and is now proceeding to collect only the balance so remaining.

The present controversy is for *mandamus* against the respondent alone to enforce payment of the quota of 1880, and in a trial at the Circuit as to the amount due, the following questions were reserved:

1st. Had Henry S. Langstaff, the defendant named therein, a right to apply the funds raised as and for the taxes for the year 1880, to the payment of the taxes due from the city of Rahway, in its corporate capacity, to the relator, collector of the county of Union, for the year 1879, the sum so raised being the sum of $18,330.09?

2d. Can the same be thus applied legally by either Henry S. Langstaff, treasurer of the city of Rahway, or the relator, Patrick Sheridan, collector as aforesaid?

3d. Can the check for $1100, drawn by the said Langstaff, to the order of said Sheridan, in payment of the taxes of 1880, under the circumstances and evidence of this cause, be applied to the payment of the taxes of 1879, as it is now sought to be applied?

We understand these inquiries to present for decision the question not whether it was abstractly right for the respondent to make the payments and procure the credits as he did, but whether, these credits having been given on the quota of 1879, it is now right and legal, as between the treasurer and collector, that they should remain as they are.

The respondent, having come into office as treasurer on September 8th, 1880, was not in any personal default for the non-payment of the quota of 1879, nor under any legal duty to pay the same. *Freeholders of Ocean* v. *Township Committee of Lacey*, 13 *Vroom* 536; *Sheridan* v. *Van Winkle*, 14 *Vroom* 579.

The quotas of 1879 and 1880 were both, however, city debts, and there appears no reason for supposing that it could make any difference to the city on which debt the credits were applied. The respondent was the proper corporate agent through whom payment should be made, and it is therefore to

be assumed that he acted as such agent in liquidating his, principal's debt. It has not been proved that the directions of the city charter (*Pamph. L.* 1865, *p.* 499, § 35,) regarding the preliminaries for such payments, were not observed, and therefore we must presume that they were observed. (*Omnia rite acta esse præsumuntur.*) Hence, as to all sums except the $1100 the case is simply one of the application of payments to that one of several debts which the debtor itself intended to pay. There can be no question of the legality of such a transaction. But even if the directions of the charter were not observed, the conduct of the corporation in the proceedings for collection of the balance of the quota of '1879, already referred to, constitutes a clear ratification of the acts of its agent, which is equivalent to original authority.

The payment of the $1100 differs from the others only in this, that it was made at first on the quota for 1880, and the authority of the city for the change to the quota of 1879 is not so manifest. But that the respondent consented to and even procured the change is perfectly evident, and whether the city authorized or will ratify the change is a question which he cannot raise; he is estopped from denying the propriety of his own conduct. There was nothing intrinsically illegal or unjust to the city in applying the payment to one corporate debt rather than the other. The entire disadvantage is personal to the respondent himself, who may be under obligations to see to the payment of the quota of 1880, while he is not so bound as to the quota of 1879; but this disadvantage he has assumed to bear by himself requiring the payment to be applied to the latter debt. If the city has authorized or ratified his action, the matter is finally concluded as to all parties; if it has not, it is for the city itself, and not the respondent, to make the objection.

We think, therefore, that all the questions reserved should be answered affirmatively.